Thomas Howell Scott, of Atlanta, Ga., for petitioners.

Morton K. Rothschild, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and J. Louis Monarch, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

**MORAINVILLE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9346.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1943.

McALLISTER, Circuit Judge.

The question presented on this appeal is whether a transaction, whereby, on a recapitalization, a stockholder received shares of preferred stock representing accumulated unpaid dividends, was tax free under § 112 of the Internal Revenue Code, Title 26, § 112, U.S.C.A., Int.Rev.Code. It is not questioned that there was a recapitalization, and that this was a statutory reorganization as provided in § 112(g) (1) (D), Revenue Act of 1936. The Board of Tax Appeals (now the Tax Court of the United States) held that the transaction was taxable.

Petitioners were holders of shares of Second Preferred stock in the Heywood-Wakefield Company. Other outstanding stock consisted of First Preferred and Common. Prior to recapitalization, accumulated unpaid dividends amounted, on the First Preferred, to $47.25 per share, and on the Second Preferred, to $50.75 per share.

On October 23, 1936, the company submitted to its stockholders a plan of recapitalization which, as finally authorized, provided among other matters for: (1) issuance of a stock dividend of two shares of $25 par value Series B First Preferred stock on each share of Second Preferred stock outstanding; (2) issuance of a cash dividend of 75¢; (3) issuance of four shares of Series B First Preferred stock in exchange for each share of Second Preferred stock.

At a special meeting of the stockholders on November 9, 1936, the plan was approved and declared effective November 30, 1936. The approval was by two-thirds of the stockholders of all classes, and under the laws of Massachusetts, governing the corporate transaction, such action was binding upon all stockholders. The express purpose of the plan was to simplify the capital structure and improve the balance sheet by eliminating accumulated unpaid dividends on the then outstanding preferred stock. Among the results of the recapitalization, was that the name of the First Preferred stock was designated Series A First Preferred stock, of the same par value. This was of no importance, and we shall hereafter refer to such stock as First Preferred. Second Preferred stock was changed to Series B First Preferred stock.

A holder of First Preferred stock, par value of $100, with dividend arrears of $47.25,—or an interest of $147.25—received in exchange a debenture bond of $100 face value, at 7%, $22.25 in cash, and a share of Series B First Preferred stock 5%, of the par value of $25,—or a corresponding interest of $147.25.

A holder of a share of Second Preferred stock of the par value of $100, 7%, with dividend arrears of $50.75,—or an interest of $150.75—received in exchange six shares of Series B First Preferred stock, 5%, with a par value of $25 a share, and 75¢ in cash,—or a corresponding interest of $150.75. The only differences resulting from the exchange were that the share of First Preferred stock, with par value of $100 at 7%, was changed to a debenture bond, with a face value of $100 at 7%, and the share of Second Preferred stock of par value of $100 at 7%, was changed to 4 shares of Series B First Preferred stock, totaling $100 par value at 5% (which would draw 7% after all past dividends had been fully paid). In addition, shares of the Series B First Preferred were issued to cover the dividends in arrears, the par value of such stock corresponding to the amount of such arrearages.

We are here concerned only with a determination as to shareholders of the stock designated as Second Preferred stock before the recapitalization. It is conceded that the dividend of 75¢ per share was taxable and that the four shares of Series B First Preferred stock, which were received on the exchange of one share of Second Preferred stock, were non-taxable. The only issue is with regard to the two shares of Series B First Preferred stock, which were also received on the transaction, covering dividend arrears on each share of the Second Preferred stock. It is the contention of the Government that the holders of the Second Preferred shares are taxable for these two shares of Series B First Preferred stock which were received as "dividends" on each share of Second Preferred stock, on the ground that such shares were received as a stock dividend in payment of accrued dividends, and did not constitute stock or securities exchanged for stock or securities on recapitalization, within the meaning of the statute; and it is argued that the receipt of these shares in payment of accrued dividends was taxable as income under Sec. 115, 26 U.S.C.A. Int. Rev.Code.

In sum, the Government contends that the dividend of two shares of Series B, representing arrears in dividends on each share of Second Preferred stock, was subject to tax as income, for the reason that it is a dividend in payment of the arrears; that it was payable only at the option of the stockholder; that it was unnecessary for the stockholder to exchange his original holding of stock in order to receive the stock representing the accrued dividends; and that, therefore, the distribution of the stock as dividends covering arrears in dividends, was a transaction separate from the exchange of the shares of Series B stock for the previously designated Second Preferred stock.

Section 112(b) (2) 26 U.S.C.A. Int.Rev. Code, provides as follows:

"(2) *Stock for stock of same corporation.* No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation."

Section 112(b) (3) 26 U.S.C.A. Int.Rev. Code, provides as follows:

"(3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Section 112(g) (1) (E) 26 U.S.C.A. Int. Rev. Code, provides as follows:

"(g) *Definition of reorganization.* As used in this section and section 113—

"(1) The term "reorganization" means * * *

"(E) a recapitalization, * * *."

The contention of the Government requires a consideration and interpretation of the following paragraph of the plan of recapitalization relating to the proposed stock transaction and the rights of Second Preferred stockholders upon acceptance:

"The Plan further contemplates that a stock dividend of two. shares of $25 par value Series B First Preferred Stock be declared on each share of Second Preferred Stock outstanding and, also a cash dividend of $0.75.

"A holder of Second Preferred Stock will, also, be offered four shares of Series B First Preferred Stock in exchange for a share of present Second Preferred Stock.

"In assenting to the Plan the holder of Second Preferred Stock will agree to accept the stock and cash dividend in full satisfaction of arrears in dividends accumulated to December 1, 1936, and further agrees to exchange his Second Preferred Stock for Series B First Preferred Stock at the ratio of four shares of Series B First Preferred to one share of Second Preferred."

It was evidently thought proper to explain to the stockholders that the plan contemplated an exchange of the new stock for the certificate of old stock, including the arrears in dividends on such stock.

Naturally, under such circumstances, it was sought to indicate to the stockholder that four of the new shares of $25 par value represented one old share of $100 par value, and that two of the new shares of $25 par value represented $50 in dividend arrears—which, together with the cash dividend of 75¢, aggregated in all, $150.75—the par value of the old stock, including the amount of dividends in arrears. In setting forth that, in assenting to the plan, the holder of Second Preferred stock agreed to accept the cash dividend and the stock dividend to be declared in full satisfaction of arrears, *and also agreed* to exchange his Second Preferred for the Series B stock, the plan clearly discloses that the cash dividend, the stock dividend, and the exchange, constituted a single integrated transaction in which the terms and provisions were interdependent. To conclude that a holder of old Second Preferred stock surrendered his share for four shares of new stock only, would necessitate disregarding the terms of the recapitalization plan and ignoring the provision that on acceptance of the plan, such stockholder agreed to accept the cash and stock dividends, *and* the exchanged stock for his old stock including the dividends in arrears.

The stockholders' rights to dividend arrears, if treated as separate from the stock itself, are to be considered as "securities in a corporation a party to a reorganization." Skenandoa Rayon Corp. v. Commissioner of Internal Revenue, 2 Cir., 122 F.2d 268. The single transaction in the case before us must be considered as a transfer of six shares of new stock and a cash dividend of 75¢ in exchange for one share of old stock; and the fact that two of the shares of new stock were denominated dividends and subsequently declared as such on acceptance of the plan of recapitalization, is of no importance. On this question, the conclusions and reasoning of the Board of Tax Appeals (now the Tax Court of the United States) in the instant case, were specifically overruled by the same court in the later case of Knapp Monarch Co. v. Commissioner of Internal Revenue, 1 T.C. 59.

Much of the Government's argument seems posited on statements in letters to stockholders, some of which are obscure, and others, apparently, erroneous. In a letter enclosing the plan of recapitalization, which was sent before the stockholders' meeting, the president stated:

"If the Plan is accepted by the Stockholders and declared effective by the Directors, the rights of the holders of the respective classes of stock shall be as follows:

### "Basis of Exchange

"First Preferred Stock

"The holders of First Preferred Stock will receive for each share of stock and its accumulated dividend rights a $100 Ten-Year Registered Debenture Bond bearing 5% interest, one share of Series B 5% Cumulative First Preferred Stock, $25 par value, and Twenty-two Dollars and Twenty-five Cents in cash.

"Second Preferred Stock

"The holders of Second Preferred Stock will receive for each share of stock and its accumulated dividend rights six shares of Series B 5% Cumulative First Preferred Stock, $25 par value, and Seventy-five Cents in cash.

"Common Stock

"No change is to be made in the Common stock.

### "Effect of Capital Structure

"If all the present holders of First Preferred Stock and Second Preferred Stock assent to the Plan, these classes of stock will be retired and cancelled, and there will be outstanding only the new Series B First Preferred Stock and the Common Stock (in addition to the Debenture Bonds to be issued under the terms of the Plan).

"If such a substantial percentage of the First Preferred and Second Preferred Stockholders assent to the Plan as would warrant the Directors in their discretion to declare the Plan operative, the shares of non-assenting First and Second Preferred Stockholders will still be left outstanding."

In a letter subsequent to the adoption of the plan by a two-thirds vote of stockholders of each class, which was binding upon all stockholders, the president observed that holders of Second Preferred stock had the right to receive cash dividends and dividends representing arrears on the old stock, whether or not they assented to the plan of recapitalization. These observations were erroneous. The undisputed testimony of the secretary of the company was that: "* * * the plan for recapitalization provided that each share of second preferred would receive 75 cents in cash and one share of Series 'B' first preferred (new stock par value $25.00) on December 15, 1936, and one share of Series 'B' first preferred on January 4, 1937, and simultaneously 4 additional shares of Series 'B' first preferred in exchange for the old second preferred shares. In other words, 6 shares of $25.00 par value new Series 'B' first preferred stock and 75 cents in cash for each share of old second preferred stock outstanding."

The plan, introduced in evidence, mentioned nothing about any optional right to receive dividends without exchange of the stock. Upon acceptance of the plan, the corporation was bound by its terms, as were all its stockholders. It was the acceptance of the plan that controlled the rights of all concerned, and the fact that certain of the stocks were afterward issued as dividends at different times, does not work a change in rights that had previously accrued. They were bound by the stock changes agreed upon, and the corporation was bound to issue such stock when the plan became effective.

In its argument, the Government says that a stockholder had the right to accept two shares of $25 par value, preferred stock, in satisfaction of accrued dividends of $50,—and that this was not conditioned on his assent to the plan of recapitalization. The inference to be drawn is that a stockholder was entitled to this method of satisfaction of accrued dividends, and was not required to exchange his shares of old stock for the new stock provided for in the recapitalization plan. Therefore, it is contended that the issuance of the stock for accrued dividends was an entirely separate transaction from the exchange of old stock for new stock—and that the stock received for the accrued dividends was, therefore, taxable as a stock dividend constituting income.

To the foregoing, the answer is that the exchange of stock for accrued dividends resulted from the plan of recapitalization, and not merely from a declaration of a stock dividend therefor. Such declaration was provided for in the plan, which outlined this method. A stockholder did not have the option to retain his old stock, and, at the same time, secure shares of new stock for accrued dividends—because, according to the plan which was adopted and binding on all stockholders, it was provided that the old stock be exchanged for the new, whether the stockholder afterward assented or not. Were we to accept the Government's contention that issuance of

new stock in satisfaction of accrued dividends, was not *conditioned* upon a stockholder's exchanging his old stock for new—which is expressly contrary to the terms of the plan submitted and adopted by the stockholders—nevertheless, it would be necessary to conclude that every stockholder receiving the so-called "stock dividends" was one who was obliged by the plan of recapitalization to exchange his former holdings for the new stock. He had no option, after the plan was adopted, to dissent and retain his old stock. The transaction, as to accrued dividends, was inextricably bound to the exchange of stock, and both arose simultaneously from the plan of recapitalization and its adoption.

The remaining question of taxability of dividends is, in this case, closely related to that which has already been determined. However, it may be said that stock dividends are taxable when they constitute income within the meaning of the 16th Amendment. § 115(f) (1) 26 U.S.C.A. Int.Rev.Code. The difficulty in a given case is to ascertain whether they really are income. In Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 769, 80 L.Ed. 1268, 105 A.L.R. 756, there appears a suggestion that in the payment of dividends of stock, there is no receipt of income where the new certificate, plus the old, represent "the same proportionate interest *in the net assets* of the corporation as did the old." See Mertens' Law of Federal Income Taxation, Sec. 9.107.

In the case before us, the proportionate representation in the assets, between the former First Preferred and Second Preferred stockholders—constituting the only preferred stock—was the same after the recapitalization as before. The exchange of 7% debenture bonds of $100 face value, for 7% First Preferred stock of $100 par value, resulted in no substantial change of interest—as far as the former Second Preferred stockholders were concerned,—for it is conceded that the four shares of Series B First Preferred, which were exchanged for the old Second Preferred, were not taxable. The relationship between the old First Preferred and Second Preferred stockholders as to priorities, was maintained by virtue of the issuance of the new debenture bonds for the old First Preferred stock. Whatever slight alterations in interest payment provisions resulted, were inconsequential. See Commissioner of Internal Revenue v. Neustadt's Trust,

2 Cir., 131 F.2d 528. The fact that preferred stock was issued to a preferred stockholder to cover dividends in arrears on the old preferred stock, did not thereby give the stockholder an altered proportionate interest, and was too unsubstantial a difference in the form and nature of the securities exchanged, to result in receipt of income under the 16th Amendment. Skenandoa Rayon Corp. v. Commissioner of Internal Revenue, supra; Knapp Monarch Co. v. Commissioner of Internal Revenue, supra. From the foregoing it is our conclusion that the transaction in question was not taxable.

The decision of the Board of Tax Appeals (now the Tax Court of the United States) is reversed and the case remanded for proceedings not inconsistent with this opinion.