### OKONITE CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9030.

Circuit Court of Appeals, Third Circuit.

Argued January 22, 1946.

Decided April 18, 1946.

[9] Cf. Helvering v. Griffiths, 1943, 318. U.S. .371, 63 S.Ct. 636, 87 L.Ed. 843.

[10] 26. U.S.C. (1940 ed.) Sec. 115 (b), 26 U.S.C.A. Int.Rev.Code, § 115 (b).

Edmund S. Kochersperger, of Washington, D. C. (Stephen A. Wilson, of New York City, on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Hilbert P. Zarky, Sp. Assts. to the Atty. Gen. on the brief), for respondent.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is a petition for review of a decision by the Tax Court. The Commissioner, respondent here, has determined certain deficiencies in income and excess profits taxes for 1936 and 1937 against Okonite, petitioner here. The Tax Court found in favor of the Commissioner, following full finding of facts and an opinion thereon. 4 T.C. 618. Only such facts will be stated here as are necessary to show the legal points presented by the taxpayer to this Court.

In 1927, Okonite issued and sold $2,000,-000 face amount of 15-year 5½ percent debentures and $1,000,000 par value of 7 percent cumulative preferred stock. The terms under which debentures and stock were issued required Okonite to pay into a sinking fund sums sufficient to retire annually at least 3½% ($70,000) of the bonds and at least $40,000 of preferred stock.[1]

In 1934, Okonite was, in the words of the Tax Court, "feeling the effects of the depression." It had operated at a loss for three years and was being drained of cash by the sinking fund requirements. It therefore proposed a plan to modify the sinking fund provision for the bonds. Acceptance of the plan was optional with the holders. In that year 77.2% of the debentures were

---

[1] Certain alternative methods of payment, not important here are set out in the Findings of Fact of the Tax Court.

deposited to evidence acceptance, enough to render the plan operative. The new bonds carried a rate of 6%. For those who did not assent, and there were some, the terms of the old 5½% bonds remained in effect. The provisions of the plan are set out by the Tax Court. In essence the 1934 arrangement eased the requirements of the 1927 sinking fund provisions for bonds.

In 1936, the first of the tax years in question, Okonite, seeking to comply with sinking fund requirements, purchased $99,500 face value of the 6% bonds and $5000 face value of the 5½% bonds. The next year, for the same purpose, it bought $93,000 face amount of 6% bonds and $3,500 of 5½% bonds. So far as the 6% bonds of 1934 were concerned there was no deficiency in either 1936 or 1937. With respect to the 5½% bonds of 1927, however, while there was no deficiency at the end of 1937, the Tax Court found, "there remained a deficiency of $14,000 in the sinking fund at the end of 1936."

So much for the relevant history of Okonite bonds. The other set of legally significant facts has to do with its preferred stock.

In the spring of 1936, dividends on the preferred stock were unpaid and in arrears by $31.50 per share. Furthermore, the Tax Court found that "The company was also in arrears on the sinking fund requirements on the preferred stock and was short of cash." It will be recalled that the preferred stock issued in 1927 carried a minimum sinking fund provision of $40,000 annually. This preferred stock had a 7% cumulative dividend rate [2] and a call provision at $115 per share, "plus all unpaid dividends, whether or not earned or declared, to the date of redemption thereof." On August 17, 1936, a dividend of $1.50 a share was declared on the preferred stock. Within a short time in the same year, Okonite's certificate of incorporation was amended to permit adoption of a plan "whereby the dividends arrears on the preferred stock would be eliminated". The latter fact finding by the Tax Court renders clear the motivation and nature it attributed to the 1936 plan and shows, we think, a statement of corporate purpose. See Bazley v. Commissioner, 3 Cir., 1946, 155 F.2d 237.

Under the 1936 corporate amendment, a new class of 11,000 shares of $100 par value 6% preferred stock, in addition to preferred and common then outstanding, was authorized. Dividends on the new 6% preferred were to be cumulative and prior to common. The new preferred was callable at $105, plus all unpaid dividends. Sinking fund requirements were to be an amount equal to 10% of net income after certain deductions.

Toward the close of 1936 the plan [3] became effective since 6,824 shares out of a total of 6,952 outstanding had been turned in to be exchanged, retired and cancelled. The following provision contains the language which is the basis for taxpayer's most heavily pressed argument in this Court: "to each holder of said stock the right to exchange each share of his seven per cent preferred stock of the Company for one share and 15/100ths of a share of the Company's new six per cent preferred stock, plus an extra dividend on each share of his seven per cent stock of one-tenth of a share of the Company's new six per cent preferred stock and in connection with such exchange, to receive in payment of all arrears of dividends up to and including the quarterly dividend period ending September 1, 1936, on each share of the seven per cent preferred stock exchanged as aforesaid, a stock dividend of three-tenths (3/10ths) of a share of new six per cent stock of the Company at par."

The small amount of remaining outstanding 7% stock was retired, part in 1936, the residue in 1937, by payment of the accumulated dividends and calling it at the stipulated price. Dividend and sinking fund re-

---

[2] No dividends were to be paid on common until all cumulative dividends had been paid on preferred. If four quarterly dividend periods were passed without payment on preferred, the latter obtained share for share voting rights with common, as was actually the situation from April 18, 1933 to April 20, 1937.

See the findings of the Tax Court for a fuller statement.

[3] It was called: "Plan and Agreement for Recapitalization, Exchange of 7% preferred stock for 6% preferred stock and Payment of Dividends in arrears on 7% Preferred stock."

quirements for the 6% stock were met by the Company for 1937.

### Tax Effect of Preferred Stock Transaction.

The first legal issue with which we are concerned arises from the terms of the 1936 plan. Did that transaction involve a taxable stock dividend which Okonite could take as a dividends paid credit or was it a non-severable recapitalization and therefore included in the type of statutory re-organization for which no credit for dividends paid could be taken by the corporation? Okonite contends for the former view while the Commissioner, with whom the Tax Court agrees, maintains the latter.

Okonite relies upon section 27(e) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 837, and maintains that four tenths of each share of new 6% stock was a taxable dividend to the shareholders. The Commissioner relies on section 112(b)(3) and section 27(h), 26 U.S.C.A. Int.Rev. Acts, pages 838, 855, maintaining that 7% stock was exchanged for 6% stock and that the distribution of the new stock was not a taxable transaction to the shareholders. The pertinent portions of the statutes involved are set out in the margin.[4] There can be no argument that a recapitalization is within the statutory definition of a reorganization.[5] Nor is there dispute that there was a recapitalization at least to the extent of the exchange of 1.15 shares of the new 6% stock for each share of old 7% stock. May the transaction be cut into two parts or is it entire? If the former, Okonite may no doubt treat four tenths of each 6% share as a dividend taxable to stockholders and upon which the Company is entitled to credit.

The Tax Court decided that "the consideration for the exchange of each share of 7 percent stock was the receipt of 1.55 shares of 6 percent stock and that it cannot be separated into two or more independent steps." This is a factual conclusion made upon examination of the terms of the plan in light of the financial situation of Okonite. There is no statute or regulation directing the conclusion of what is a whole transaction and what is a transaction of several steps. It is a matter of drawing a factual inference from the evidential facts. This is therefore precisely the kind of question that is not determinable as a matter of its own judgment by this Court. The Dobson decision[6] directly precludes the substitution of our judgment on a matter of this kind for that of the Tax Court. Nor do we think that Dobson, as to this point, has been modified by anything which the Supreme Court has decided since.

Is there that basis for the Tax Court's result whch protects it against successful

---

4 "Sec. 27. Corporation Credit For Dividends Paid

\* \* \* \* \* \* \* \*

"(e) Taxable Stock Dividends. In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment.

\* \* \* \* \* \* \* \*

"(h) Nontaxable Distributions. If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part."

"Sec. 112. Recognition of Gain or Loss

\* \* \* \* \* \* \* \*

"(b) Exchanges Solely in Kind.

\* \* \* \* \* \* \* \*

"(3) Stock for Stock on Reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

5 Section 112(g) (1) (D). 26 U.S.C.A. Int.Rev.Acts, pages 858, 859.

6 Dobson v. Commissioner, 1943, 320 U. S. 489, 502, 64 S.Ct. 239, 247, 88 L.Ed. 248, rehearing denied, 1944, 321 U.S. 231, 64 S.Ct. 495, 88 L.Ed. 691. "Whether an apparently integrated transaction shall be broken up into several separate steps and whether what apparently are several steps shall be synthesized into one whole transaction is frequently a necessary determination in deciding tax consequences. Where no statute or regulation controls, the Tax Court's selection of the course to follow is no more reviewable than any other question of fact."

attack in this Court? Okonite points to the language of the plan which talks in terms of payment of dividends and adds that its journals show entries consistent only with this view. All of that establishes nothing more than the taxpayer's desire to have the transaction regarded in a particular way. It does not characterize the real nature of the transaction, which was the question the Tax Court had to answer.

There is ample evidence to sustain its conclusion. The financial predicament of Okonite in early 1936, it will be recalled, was characterized by large arrears in dividends on the 7% preferred, plus arrears in sinking fund requirements relative thereto, plus a shortage of cash. When such circumstances call forth a plan, it is certainly reasonable to conclude that elimination of the source of difficulty was its essential nature. Furthermore, the plan did not offer to shareholders a choice between retention of old stock plus dividend or acquisition of new stock plus dividend. A stockholder received no dividend by retaining his old 7% stock. It is reasonable enough to infer that no stockholder received a dividend by electing to take new 6% stock. It is true that a cash dividend was paid in full to the 7% holders very shortly after enough stockholders had exchanged their stock so as to make the plan operative. But unless the bulk of shareholders had exchanged their shares as they did, Okonite would have been in no position to give the cash dividend to the surviving 7% shareholders. The cash dividend actually paid only serves to emphasize the weakness of the stock dividend theory.

The Tax Court points to the Skenandoa [7] case and the Knapp-Monarch case [8] as presenting similar conclusions in comparable situations. The Commissioner adds the Morainville case [9] to this group. Okonite seeks to distinguish them on their facts. Since no two cases of this sort are ever identical, distinctions may be drawn that are more facile than they are fundamental. We are made all the more certain in our conclusion by the general congruence of the cases mentioned with the result in this case. Okonite points to the use of different words in the plans which were the subject of review in the other cases; "released", "in lieu of", "satisfied", as contrasted with "payment" here. We find no such controlling significance in the different words used. The conclusion does not turn on form.

With the direct route blocked on the basic question of severability, Okonite has tried to reach the destination friendly to it by several detours.

The first of these is most readily disposed of. It involves use of section 115(f)(2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 870, which provides that where there is an election between stock dividend and cash dividend, whichever medium is chosen shall constitute a taxable dividend.[10] There is no choice between a cash dividend and a stock dividend involved in the 1936 plan. The section is wholly inapplicable. The second attempt is based on section 115(g) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 870, which provides that a cancellation or redemption which is in whole or in part essentially equivalent to a taxable dividend shall be so treated.[11] It is precisely because in essence rather than form the redemption and cancellation here are not

[7] Skenandoa Rayon Corporation v. Commissioner, 1940, 42 B.T.A. 1287, affirmed 2 Cir., 1941, 122 F.2d 268, certiorari denied 1941, 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556.

[8] Knapp-Monarch Co. v. Commissioner, 1942, 1 T.C. 59, affirmed 8 Cir., 1944, 139 F.2d 863.

[9] Morainville v. Commissioner, 6 Cir., 1943, 135 F.2d 201.

[10] § 115 (f) "(2) Election of Shareholders as to Medium of Payment. Whenever a distribution by a corporation is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either (A) in its stock or in rights to acquire its stock, of a class which if distributed without election would be exempt from tax under paragraph (1), or (B) in money or any other property (including its stock or in rights to acquire its stock, of a class which if distributed without election would not be exempt from tax under paragraph (1), then the distribution shall constitute a taxable dividend in the hands of all shareholders, regardless of the medium in which paid."

[11] § 115 (g) "Redemption of stock. If a corporation cancels or redeems its stock

equivalent to a taxable dividend that they have been disallowed by the Tax Court. Both these arguments assume what they wish to prove. These detours go in circles; their point of departure is their ultimate destination.

The other attempt is based on what Okonite calls an "estoppel". Okonite, through its treasurer, told its shareholders to enter the four tenths of a share of 6% stock as taxable stock dividend in their returns. We may assume that some of them, at any rate, did so. Since the Commissioner neither disputed the correctness of this treatment nor made a refund to the shareholders, Okonite claims he is estopped from treating it as other than taxable. Note, however, that there was no representation or prior action by anyone but Okonite itself. The Commissioner is free to re-audit stockholders liability within the period of limitations. See Sharpe v. Commissioner, 3 Cir., 1939, 107 F.2d 13, certiorari denied 1940, 309 U.S. 665, 60 S.Ct. 591, 84 L.Ed. 1013; Knapp-Monarch Co. v. Commissioner, 8 Cir., 1944, 139 F.2d 863. Furthermore, he may well wish to wait the ultimate result of this lawsuit before returning anything to the stockholders.

## Effect of Sinking Fund Requirements.

The final issue is whether the purchase by taxpayer of its debentures to meet sinking fund requirements, taken in conjunction with sections 26(c) (1) and (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, entitle it to a dividends paid credit. The claim for credit as to the bonds rests upon both sections, while that for the preferred stock is confined to section 26(c) (2).

Section 26(c) (1) permits an amount of credit equal to the "excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends" [12] without violation of a dividend limitation contract executed prior to May 1, 1936. The Tax Court shows that as a fact in both 1936 and 1937 there was no excess such as the statute requires.

Section 26(c) (2) states that the contract must require a portion of earnings and profits either to be paid or set aside within the taxable year in discharge of a debt.[13] The Tax Court points out that there was no obligation upon the taxpayer restricting the retirement fund for the bonds to current earnings or to any other source. Any

---

(whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

[12] § 26 "(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on Payment of Dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other

contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

[13] § 26(c) "(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

money which taxpayer had available could be used for the purpose. Further, the Tax Court characterizes the preferred stock as a capital investment rather than an evidence of indebtedness, which of course takes that stock out of the provisions of the statute.

The conclusions just mentioned fall within the Dobson rule that fact findings of the Tax Court shall not be disturbed. They find adequate support in the evidence.

Affirmed.