### CLARK v. COMMISSIONER OF INTERNAL REVENUE.

### MERCANTILE-COMMERCE BANK & TRUST CO. et al. v. SAME.

### Nos. 13465, 13466.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1947.

James E. Garstang, of St. Louis, Mo. (Emmet T. Carter and Gerald K. Presberg, both of St. Louis, Mo., on the brief), for petitioners.

Hilbert P. Zarky, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

In these cases, which were consolidated for hearing in the Tax Court and in this court, Lenore Scullin Clark, in her income tax return for the year 1941, and Harry

Scullin[1] and Bernice W. Scullin, his wife, in their return for the same year, claimed capital losses deductible from net income, incurred on sales of certain stock purchase warrants made in the taxable year. The Commissioner ruled that the taxpayers had realized capital gains instead of losses on the sales in question and determined deficiencies. On review, the Commissioner's action was sustained by the Tax Court.

So far as material, the facts in the cases are identical. Lenore Scullin Clark and Harry Scullin were among the beneficiaries of a trust under the will of John Scullin, deceased. The trustees of this trust were the holders of $1,497,000 principal amount of 6½ per cent debenture bonds of Scullin Steel Company, a Delaware corporation, acquired by the trustees in 1926 at a cost of $1,452,090. Interest on the debentures had been in default since April 1, 1931. In 1937 the company was reorganized pursuant to section 77B of the Bankruptcy Act, 11 U.S. C.A. § 207. The plan of reorganization provided for the formation of a new company with an authorized issue of 29,940 shares of preferred stock of a par value of $50 a share, and 395,510 shares of common stock of no par value. Holders of the preferred stock of the new company were granted the right to convert it into common stock on the basis of one share of preferred stock for one and one-quarter shares of common stock. The plan also provided for the issue of 524,840 stock purchase warrants, in bearer form, entitling the holder of each four of such warrants to subscribe to one share of common stock in the new company upon the payment of $10.

The particular provisions of the reorganization plan necessary for consideration here are as follows:

"VII.

Allocation of Capital Stock of New Company

It is proposed that the capital stock of the New Company shall be allocated and distributed as follows:

A. 29,940 shares of Preferred Stock to the holders of $1,497,000 of outstanding De-

bentures on the basis of 20 shares of such stock for each $1,000 principal amount of such Debentures, which Debentures shall then be cancelled, together with the coupons evidencing interest thereon.

\* \* \* \* \* \*

IX.

Issuance and Distribution of Stock Purchase Warrants

There shall be issued Stock Purchase Warrants dated as of May 1, 1937, in bearer form, which will entitle the holder of each four of such warrants to subscribe for one (1) share of Common Stock for Ten Dollars ($10.00) per share within five (5) years from the date thereof. An aggregate of 524,840 warrants shall be issued as follows:

\* \* \* \* \* \*

B. 79,840 thereof to the holders of the Debentures, which warrants are in lieu of and in satisfaction for all accrued, accumulated and unpaid interest upon said Debentures, on the basis of 53⅓ warrants for each $1,000 face amount of Debentures \* \* \*."

A new company was organized under the name of Scullin Steel Company, a Missouri corporation, and its securities were issued and distributed as provided by the plan. The trustees of the trust received on or about December 20, 1937, 29,940 shares of a par value of $50 per share of preferred stock of the new corporation on the basis of 20 shares for each $1,000 face value of the debentures, and 79,840 stock purchase warrants in satisfaction of accrued and unpaid interest upon the debentures. The trust reported no taxable income as the result of this exchange of securities. The parties agree that this was an exchange of securities in which no gain or loss was realized. Revenue Act of 1936, § 112(b) (3), 26 U.S.C.A. Int.Rev.Code, § 112(b) (3).

The stock purchase warrants were distributed by the trustees to the beneficiaries of the trust in 1937, but neither taxpayer reported any taxable income for that year as the result of the receipt of warrants. During the year 1941 some of these stock

---

[1] After the decisions in the Tax Court Harry Scullin died. Mercantile-Commerce Bank and Trust Co., a corporation, and Bernice W. Scullin, coexecutors under the will of Harry Scullin, have been substituted in his place as petitioners.

purchase warrants were sold by the taxpayers, and, as noted above, long-term capital losses were claimed by them in their respective income tax returns.

None of the preferred stock of the new company has been sold, but in December 1937 there were sales of common stock and of stock purchase warrants. The Tax Court found and petitioners now agree that at the time of their distribution to the taxpayers the stock purchase warrants had a value of 95 cents each. Since one share of preferred stock of the new company could be converted into one and one-quarter shares of common stock, the taxpayers attributed to the preferred stock a value of $13 a share, that is, the purported average value of the common stock multiplied by 1¼.

In the Tax Court taxpayers contended, as the petitioners contend here, that the reorganization plan provided for one exchange of debenture bonds and the coupons representing past-due interest on the bonds for both preferred stock and stock purchase warrants of the new company. On this reading of the plan of reorganization, which petitioners assert is the only reading permissible, the basis of the stock purchase warrants in the hands of the taxpayers for the computation of gain or loss on the sales of the warrants in 1941 must be determined by allocating the agreed cost basis of the debentures ($1,492,090) to both preferred stock and stock purchase warrants for which the debentures were exchanged in the course of a nontaxable reorganization. Internal Revenue Code, § 113(a) (6), 26 U.S.C.A. Int.Rev.Code, § 113(a) (6). On this contention, by a computation, the accuracy of which is not at issue here, the taxpayers obtain a cost basis for each stock purchase warrant which, if accepted, would show capital losses sustained by them on sales of the warrants.

The Commissioner does not deny that the result for income tax computation would be that claimed by petitioners if their interpretation of the plan of reorganization is accepted. The argument of the Commissioner is that the trustees, in the consummation of the plan of reorganization, exchanged debentures of the old company which had an agreed cost basis of $1,452,- 090 for 29,940 shares of preferred stock and for nothing else; that the entire cost basis of the debentures was therefore required to be allocated to the preferred stock and none of it to the stock warrants; that the trustees received the 79,840 stock warrants in satisfaction for only accrued and past-due interest upon the debenture bonds; that because the exchanges were in a nontaxable reorganization and because none of the past-due interest had ever been returned as taxable income either by the trustees or by the taxpayers, the cost basis of such stock warrants must be held to be zero under section 113(a) (6) of the Internal Revenue Code.

The Tax Court sustained the Commissioner, basing its holding squarely on the provisions of the plan of reorganization, saying: "It therefore seems clear from the foregoing that the trustees received these stock purchase warrants strictly in settlement of the past due interest on the debentures and for nothing else, and while the receipt of such warrants was not taxable income to the trustees because it was part of a plan of reorganization, it also did not serve to give them any cost basis for the stock warrants. The stock warrants neither cost the trustees anything nor the beneficiaries of the trust anything when distributed to them. Of course the claim of the trustees for accumulated and unpaid interest on the debentures was a valuable right but this unpaid interest never having been taken into income by the trustees, had no cost basis to them. Petitioners do not contend that the past due and unpaid interest on the debentures had any cost basis to them. What they are contending is that the $1,452,000 stipulated cost of the debentures should be allocated between the preferred stock and the stock purchase warrants. But for reasons we have already stated we reject this contention. Therefore, in 1941, when petitioners, beneficiaries of the trust, sold the warrants here involved, they had no cost basis under Section 113, Internal Revenue Code, and all that they received, less expense of selling, represented gain to them. That gain the Commissioner has determined shall be taken into account at capital gain rates, and in this determination we sustain him."

The Commissioner argues for the affirmance of the decisions under review on the ground that the conclusion reached by the Tax Court in these cases is a factual conclusion supported by substantial evidence and not reviewable by a circuit court of appeals. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. On the other hand, the petitioners assert that the Tax Court has drawn its conclusion in these cases from its interpretation of a written instrument, the plan of reorganization, and therefore has decided a question of law on which this court may substitute its judgment for that of the Tax Court. Reliance is placed upon Morainville v. Commissioner, 6 Cir., 135 F.2d 201, decided before Dobson v. Commissioner, and for that reason of doubtful weight; and upon Thornley v. Commissioner, 3 Cir., 147 F.2d 416, 420, in which the court, one judge dissenting, held that, where the Tax Court was required to determine the taxable consequences of a transfer of the assets of a partnership to a corporation "from various writings which chronicled the transaction", a question of law was presented for review by the court of appeals. Compare Okonite Company v. Commissioner, 3 Cir., 155 F.2d 248, 250, 251. But we find it unnecessary to decide the perplexing issue raised by these opposing contentions.[2] For conceding for the argument that the question here is one of law and not of fact, we are unable to say that the conclusion reached by the Tax Court in these cases is irrational or without a reasonable basis in law, in view of the explicit language of Section IX of the plan of reorganization which provides for the issue of stock purchase warrants to the holders of debentures "in lieu of and in satisfaction for all accrued, accumulated and unpaid interest upon said debentures." We are not at liberty therefore to substitute our judgment for that of the Tax Court even if it may be said that a conclusion opposite to that which the Tax Court has reached is not entirely unreasonable on the record before us. Dobson v. Commission-

er, supra; Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78, 166 A.L.R. 708; John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278; Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670; Commissioner v. Estate of Bedford, 325 U.S. 283, 292, 65 S.Ct. 1157, 89 L.Ed. 1611; Commissioner v. Scottish American Investment Company, Ltd., 323 U.S. 119, 124, 125, 65 S.Ct. 169, 89 L.Ed. 113; Sunnen v. Commissioner, 8 Cir., 161 F.2d 171; Helvering v. Meredith, 8 Cir., 140 F.2d 973, 974; Brooklyn National Corporation v. Commissioner, 2 Cir., 157 F.2d 450; Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23.

Affirmed.

---

[2] For a review of the cases in the Supreme Court and in the Circuit Courts of Appeals since Dobson v. Commissioner, and a discussion of the distinction between a question of fact and a question of law in decisions of the Tax Court, see

Dobson v. Commissioner: An Analysis, Paul's Federal Estate and Gift Taxation, 1946 Supplement, § 1422(a) and 1422(b): The Bingham case, Id., § 1422(c); Gordon, Reviewability of Tax Court Decisions, 2 Tax Law Review 171.