T.C. Memo. 2008-133

UNITED STATES TAX COURT

JEFFREY M. BIGLER AND CASSANDRA M. BIGLER, ET AL.,[1] Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9541-06, 9542-06,      Filed May 19, 2008.
         9543-06.

Robert M. Galloway, for petitioners.

William F. Barry IV and Benjamin De Luna, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined deficiencies in
petitioners' income tax for 2002 and penalties thereon as
follows:

---

[1]  Cases of the following petitioners are consolidated
herewith:  Bruce Bigler and Wendy Bigler, docket No. 9542-06;
Donald G. Bigler and Linda Bigler, docket No. 9543-06.

| Petitioners | Deficiency | Penalty Sec. 6662(a) |
|---|---|---|
| Jeffrey and Cassandra Bigler | $236,286 | $47,257.20 |
| Bruce and Wendy Bigler | 237,523 | 47,504.60 |
| Donald and Linda Bigler | 506,443 | 101,288.60 |

After concessions, the issues remaining for decision are: (1) Whether BBB Industries, Inc. (BBB), must include in income the entire amount shown on a customer's invoice; (2) whether BBB is permitted to deduct from income the amount it estimates it will have to credit customers for the return of cores; and (3) whether petitioners are liable for the accuracy-related penalty pursuant to section 6662(a)[2] for 2002.

On February 28, 2006, respondent issued petitioners notices of deficiency based on adjustments to petitioners' shares of income as shareholders in BBB, an S corporation. Respondent determined that BBB's method of accounting did not clearly reflect income and therefore changed BBB's method of accounting. Further, with regard to the change in accounting method respondent made a section 481(a) adjustment related to the deferred core income of $2,082,957. In the stipulation of settled issues respondent reduced this amount by $1,612,766.84.

_____

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petitions, petitioners Jeffrey and Cassandra Bigler lived in Texas, and petitioners Bruce and Wendy Bigler lived in Alabama, as did petitioners Donald and Linda Bigler. Petitioners Cassandra Bigler, Wendy Bigler, and Linda Bigler are petitioners in their respective cases by reason of their filing joint Federal income tax returns for the calendar year 2002 with their respective spouses. All subsequent references to petitioners will refer to Jeffrey Bigler, Bruce Bigler, and Donald Bigler collectively.

Petitioners are the owners of BBB, an S corporation that uses the accrual method of accounting.[3] BBB is in the business of remanufacturing automobile parts, such as alternators and starters. BBB's remanufacturing of an automobile part begins with a used part called a "core". BBB sells its remanufactured parts to retailers. The invoice BBB presents to its customers comprises two charges for each remanufactured part: A unit price and a core price. For each remanufactured part sold to a customer, i.e., starters and alternators, BBB is owed the total

---

[3] Jeffrey Bigler and Bruce Bigler each owned 24 percent, and Donald Bigler owned 52 percent.

of the core price and the unit price.  For each remanufactured part purchased, the customer is entitled to return a core to BBB for a credit.  The credit BBB gives the customer for the return of the core is the core price listed on the invoice.  The amount of the core credit depends on the contract each customer has with BBB.  There is no time limit within which a customer must return a core to receive a credit.  BBB is unable to use all of the returned cores for remanufacturing.  BBB sells unused cores for scrap but does not reduce the credit to the customer for the unusable cores.  Furthermore, BBB accepts cores and credits customers for cores even if the customers did not originally acquire the cores from BBB.  Among the reasons BBB does this are to maintain customer loyalty and to guarantee it has a supply of cores to remanufacture and later resell.

The amount and percentage of cores returned to BBB vary from year to year.  In some years more cores were returned than sold.  BBB does not know how many cores have not been returned by its customers at the end of the year.  As of December 31, 2002, BBB did not know how many cores would be returned, when the cores would be returned, or which cores would be returned.  When BBB sells remanufactured parts to its customers, ownership in the parts and the cores passes to the customer, with BBB having no future rights in the core.

BBB determined the cost of each type of core as of December 31, 2002, on the basis of either the average of the prices listed on the pricing sheet of its main suppliers for the 2002 year or the average amount BBB paid for the cores according to the invoices provided by its suppliers for the 2002 year. BBB includes in accounts receivable the total amount included in the invoice to the customer. The "in-house liability" account represented the amount BBB expected to credit customers for cores they actually returned. Using the differences between the cores sold and the cores returned, BBB calculated the amounts it would have to credit its customers for the return of the cores that BBB had not received during the tax year from its customers but expected to receive in a subsequent tax year. BBB created an account called "deferred core income" which BBB credited for the potential liability in an amount equal to the core price on the invoice.

BBB reported the sum of three accounts: In-house liability, deferred core income, and adjustment for rebate liability on Schedule L, Balance Sheets per Books, statement 13 of BBB's 2002 Form 1120S, U.S. Income Tax Return for an S Corporation. The sum at the beginning of 2002 was $2,082,957, and the sum at the end of the year was $2,783,905. As of January 1, 2002, the balance of the deferred core income account was $406,189.88, and on December 31, 2002, the balance was $2,080,686.71. For 2002 BBB

reduced taxable income by $1,674,499.83,[4] the amount accrued during the year in the deferred core income account.

OPINION

I. Method of Accounting

Pursuant to section 446(a), taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes income in keeping its books. Section 446(b) contains an exception in the situation where the method used by the taxpayer does not clearly reflect income. In such cases, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income. A taxpayer may use the accrual method of accounting to report income. See secs. 446(a), (c), 451(a). If the taxpayer elects to report its income in that manner, the taxpayer must report income in the year in which "all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Sec. 1.451-1(a), Income Tax Regs.; see also sec. 1.446-1(c)(1)(ii)(A), Income Tax Regs. Generally, all the events that fix the right to receive income occur on the earliest of the following: (1) The date payment is

---

[4] The difference between the $406,189.88 balance at the start of the year and the $2,080,686.71 closing balance is $3 less than the $1,674,499.83 amount accrued during the year. Both parties have stipulated the amounts, and there appears to be no explanation for the $3 discrepancy. The $3 discrepancy has no effect as to the outcome of the case.

received; (2) the date payment is due; or (3) the date of performance.  See Schlude v. Commissioner, 372 U.S. 128 (1963); Johnson v. Commissioner, 108 T.C. 448, 459 (1997), affd. in part, revd. in part and remanded on another ground 184 F.3d 786 (8th Cir. 1999); Firetag v. Commissioner, T.C. Memo. 1999-355, affd. without published opinion 232 F.3d 887 (4th Cir. 2000).

In addition when applying the all events test, we consider conditions precedent which are required to be met before a fixed right to receive income exists.  We disregard conditions subsequent which may terminate an existing right to income but the presence of which does not preclude the accrual of income. See Keith v. Commissioner, 115 T.C. 605, 617 (2000); Charles Schwab Corp. & Subs. v. Commissioner, 107 T.C. 282, 293 (1996), affd. 161 F.3d 1231 (9th Cir. 1998).

On the deduction side, a liability accrues in the taxable year in which:  (1) All the events have occurred that establish the fact of the liability, (2) the amount of the liability can be determined with reasonable accuracy, and (3) economic performance has occurred with respect to the liability.  Sec. 1.461-1(a)(2), Income Tax Regs.

Petitioners argue that despite the fact that the dollar amounts stated on the 2002 invoices as the prices of the cores total $2,080,686.71, the deferred core income account was actually only worth $841,020.  Petitioners contend that BBB

should not have to include in income the additional receivable for cores which had not been returned at the end of the year, $1,239,666.71. Furthermore, petitioners argue that BBB's deferred core income account is essentially a contra receivable reflecting the fact that the receivable is worth less than the dollar amount stated. On the income side, petitioners do not dispute that the all events test has been satisfied.

Respondent argues that the entire amount BBB billed its customers in 2002 should be included in income. Until the cores are actually returned to BBB, the full amount must be included in income and no offsetting deduction is allowed. Respondent also argues that petitioners have failed to prove that the fair market values of the cores are substantially less than the amounts billed.

For reasons that follow, we agree with respondent that BBB was required to include the full amount billed in income. When BBB sold remanufactured cores to its customers, the bill contained two charges: One for the remanufactured part and one for the core. Upon returning a core, the customer was entitled to a credit in an amount equal to the price of the core on the invoice. After the sale the amount stated was fixed, and BBB had the right to collect the entire amount stated on the invoice. The fact that BBB might have to credit the customer at some point in the future does not mean that income has not accrued. Thus

the all events test was satisfied for the entire amount of the invoice.

The fact that BBB virtually never received cash for cores does not mean that income did not accrue. In Ertegun v. Commissioner, T.C. Memo. 1975-27, affd. 531 F.2d 1156 (2d Cir. 1976), Atlantic Records (Atlantic) had a policy whereby it would allow certain distributors a 10-percent record return allowance. Atlantic reduced its income on the basis of the 10-percent allowance for records that had yet to be returned. Atlantic, like BBB, had specific business reasons for the policy and billed customers the full amount despite the possibility of a return or credit. The Court in Ertegun held, and the U.S. Court of Appeals for the Second Circuit affirmed, that since the event triggering the credit, i.e., the return of the merchandise, did not occur until after the period in question, no accrual of a liability for the credit was permitted. It is firmly established that a reserve for future or contingent liabilities cannot be deducted. Lucas v. Am. Code Co., 280 U.S. 445 (1930). BBB must accrue as income the entire amount in the deferred core income account.

Both petitioners and respondent agree that the facts of this case are similar to those in Okonite Co. v. Commissioner, 4 T.C. 618 (1945), affd. 155 F.2d 248 (3d Cir. 1946). In Okonite, customers purchased wire and cable on a reel used for shipping and could return the reels within a certain period for a credit.

Like the reels in <u>Okonite</u>, the cores in BBB were sold to customers, who were free to keep them, to sell them elsewhere, or to return them to BBB. See also <u>Colonial Wholesale Beverage Corp. v. Commissioner</u>, T.C. Memo. 1988-405, affd. 878 F.2d 23 (1st Cir. 1989).[5] While BBB's customers can return cores at any time, this fact does not change the outcome. BBB did not retain title to the cores and had no way of forcing customers to return cores. Petitioners argue that over a 4-year period over 97 percent of cores were returned to BBB. Again this does not change the fact that the customers had complete ownership over the cores and were not forced to return them. The high rate of return does not alter the fact that income accrued on the sale for the entire amount billed.

Petitioners admit that the all events test has been met upon the sale to customers. Petitioners further admit that customers have ownership of the cores and are free to do as they please with them. Petitioners' argument that the invoice price of the core is vastly overstated and thus only a portion should be

---

[5] In <u>Colonial Wholesale Beverage Corp. v. Commissioner</u>, T.C. Memo. 1988-405, affd. 878 F.2d 23 (1st Cir. 1989), pursuant to State law, customers had to pay a deposit for cans but were entitled to a refund when the cans were returned. Colonial had to accrue as income the amount of the deposit and could not claim a deduction until the cans were returned. Once the cans were sold, ownership was entirely with the customer, as was true of the reels sold in <u>Okonite Co. v. Commissioner</u>, 4 T.C. 618 (1945), affd. 155 F.2d 248 (3d Cir. 1946), and of the cores sold by BBB.

included in income is unpersuasive.  Additionally, BBB cannot deduct amounts for cores that have yet to be returned.  The liability is contingent on the return of the core and is not certain to accrue.  See United States v. Gen. Dynamics Corp., 481 U.S. 239 (1987).  As a result, BBB must report income as respondent has argued, and petitioners must report income accordingly.

## II.  Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).  Petitioners contend that they should not be liable for this penalty.  We agree with petitioners.

Respondent has the burden of production and must come forward with sufficient evidence that it is appropriate to impose the penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Section 6662(a) imposes an accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if that portion is attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax.  See sec. 6662(a) and (b)(1) and (2); sec. 1.6662-2(a)(1) and (2), Income Tax Regs. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the same circumstances.  Neely v. Commissioner, 85 T.C. 934 (1985).

Disregard is characterized as any careless, reckless, or intentional disregard. See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Negligence is strongly indicated where a taxpayer fails to include on an income tax return an amount of income shown on an information return. See sec. 1.6662-3(b)(1), Income Tax Regs. There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs. BBB failed to include as income the full amount shown on the invoices, and as a result, petitioners underreported their income and there were substantial understatements of their income tax. Therefore, respondent has met his burden of production with respect to this penalty. However, the accuracy-related penalty does not apply to any portion of an underpayment for which there was reasonable cause and where the taxpayer acted in good faith with respect to that portion. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. BBB kept detailed records of its transactions, BBB's bookkeeping was in accordance with generally accepted accounting principles, and BBB followed industry standards. Although these

factors are not determinative of the tax consequences to BBB and petitioners, they do show that petitioners acted reasonably and in good faith.  As a result, petitioners are not liable for the section 6662(a) penalty.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we conclude they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.